IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FREDERICK GROSS | ) | |
| | ) | CASE NO.: 3:22-cv-00542 |
| v. | ) | Related Case: 3:21-cr-00190 |
| | ) | |
| UNITED STATES OF AMERICA | ) | JUDGE RICHARDSON |
| | ) | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is a pro se motion (Doc. No. 1, "Petition") under 28 U.S.C. § 2255, filed by Petitioner, Frederick Gross, who seeks vacatur or correction of the sentence imposed on him in this Court's Case No. 3:21-cr-00190 ("underlying criminal case").[1] In the Petition, Petitioner lays out two arguments in support of vacating or correcting his sentence: (1) two of his prior assault convictions cannot serve as predicate offenses to support a sentencing enhancement under 18 U.S.C. § 924(e) (the Armed Career Criminal Act ("ACCA")) in his underlying criminal case because (according to Petitioner) the crimes underlying those convictions are no longer considered "crimes of violence"; and (2) Petitioner received ineffective assistance of counsel in his underlying criminal case. (Doc. No. 1 at 3-4). The Government filed a response[2] (Doc. No. 7, "Response") to the Petition, to which Petitioner filed a reply (Doc. No. 8, "Reply").

Petitioner subsequently submitted additional filings intended to add to or further explain the grounds asserted in the Petition. First, Petitioner seeks to "amend" his Petition to include the "constitutional arguments raised in 'Erlinger' [*v. United States*, 602 U.S. 821, (2024)] and

---

[1] The Petition has not been filed on the docket of the underlying criminal case, but the Court has dual-captioned this Order so that this Order may be filed on the docket of the underlying criminal case.

[2] The Government submitted their response via ECF as a motion to dismiss; however, the submitted document was entitled "United States' Response to Motion to Vacate Sentence Under 28 U.S.C. § 2255." (Doc. No. 7).

'Wooden' [*v. United States*, 595 U.S. 360, (2022)]."[3] (Doc. No. 30, "Motion to Amend"). Next, Petitioner filed a supplement (Doc. No. 33, "Supplement") to reiterate his position as stated in the Petition and to argue that he has not knowledge as the language of his Plea Agreement. And finally, Petitioner filed a "Final Reply to '2255 Motion' Sentence Reduction 18 U.S.C. § 3582(c)(1)(A)(i)" (Doc. No. 36, "Final Reply"), wherein Petitioner seeks to call *United States v. Taylor*, 596 U.S. 945 (2022), to the Court's attention.

For the reasons discussed herein, the Petition is **DENIED**.

BACKGROUND[4]

On December 15, 2018, Clarksville police dispatch received a call about a robbery in progress in Clarksville, Tennessee. (Presentence Investigation Report ("PSR"), ¶ 4).[5] Clarksville police ("CP") officers apprehended Petitioner, who matched the description of the robbery suspect. *Id*. Petitioner had approximately $400 in his pocket. *Id*

CP officers met with the victim of the robbery, JH, who identified herself as Petitioner's girlfriend. (PSR, ¶ 5). She told officers that while driving with her mother and Petitioner in the car, she had to stop at a Burger King parking lot because Petitioner had attempted to exit the car as it

---

[3] The Court presumes that, via the words "both [S]upreme [C]ourt decisions," Petitioner is referring to *Wooden v. United States*, 595 U.S. 360, 363 (2022) (holding that the Government must allege and establish that convictions occurred on different occasions to meet the Armed Career Criminal requirements and that what constitutes an "occasion" under the ACCA is a multi-factored analysis that requires courts to look at timing, proximity of location, and the character and relationship of the offenses) and *Erlinger v. United States*, 602 U.S. 821 (2024) (holding that absent concession by the defendant, a jury rather than the judge must resolve the ACCA's "different occasions" inquiry, unanimously and beyond a reasonable doubt). Neither of these cases present a scenario or address an issue that would impact the Petition in this matter. Therefore, the Court will not consider the holding of either *Erlinger* or *Wooden* in deciding the Petition.

[4] Unless otherwise noted, the facts in this section are taken from documents of record in Petitioner's underlying criminal case. Documents cited from Petitioner's underlying criminal case will be cited as "R. __", rather than as "Doc. No. __" which will indicate a citation to a document in Petitioner's civil case (the above-captioned case). The facts in this section are taken as true for purposes of this Memorandum Opinion.

[5] The PSR is found on the docket at Docket No. 12.

was still in motion. (*Id*.). Petitioner pulled a silver and pink handgun from a fanny pack, waved it around, and threatened to kill JH and her mother. (*Id*.). Petitioner then grabbed approximately $400 from the center console of the car and ran. (*Id*.). JH told CP officers that Petitioner had a fanny pack and handgun when he ran from the car. (*Id*.).

CP officers conducted a "show-up" identification with JH and her mother, who both identified Petitioner. (*Id*.). CP officers and a K-9 searched the parking lot and dumpsters near the Burger King where Petitioner had fled but did not locate a firearm. (PSR, ¶ 6). At 3:23 a.m. the next morning, a Regal Cinemas employee found a fanny pack in the parking lot of the nearby Regal Cinemas while sweeping; inside that fanny pack, CP officers found – among other items – a silver and pink Taurus, Model 709 9mm pistol. (*Id*.).

The Tennessee Bureau of Investigation ("TBI") forensic lab was unable to find any identifiable fingerprints on the recovered firearm. However, test results from swabbing the firearm matched Petitioner's DNA records stored in the Combined DNA Index System. *Id*. This finding was then confirmed by TBI via a new DNA sample obtained from a cheek swab of Petitioner. *Id*. Moreover, a firearm nexus analysis was performed on the Taurus Model PT 709 pistol by an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and that analysis revealed that the firearm has not been manufactured in Tennessee (i.e., it had crossed a state line, and therefore, traveled in interstate commerce). (PSR, ¶ 7).

On August 23, 2021, based on the above-described incident, Petitioner was charged via a single-count indictment with possession of a firearm subsequent to a felony conviction, in violation of 18 U.S.C. § 922(g)(1). (R. 14, "Indictment"). On November 29, 2021, Petitioner pled guilty to the sole count of the Indictment. (R. 33, "Plea Agreement"). As a part of the Plea Agreement, Petitioner accepted that three specific prior convictions qualified as predicate violent felonies to

support a sentencing enhancement under the ACCA; those convictions being:

(1) 2008 conviction for facilitation of attempted especially aggravated robbery,
(2) 2012 conviction for aggravated assault with serious bodily injury, and
(3) 2014 conviction for aggravated assault with a deadly weapon

(*Id.* at 5). On March 4, 2022, at Petitioner's sentencing hearing, the Court found that Petitioner was an Armed Career Criminal, and therefore, subject to an enhanced sentence under the ACCA, based on the following qualifying offenses:

a) On March 3, 2004, the defendant was convicted of Facilitation of Aggravated Robbery (two counts) in Davidson County Juvenile Court, Docket No. PT13919.

b) On March 5, 2008, the defendant was convicted of Facilitation of Attempted Especially Aggravated Robbery in Davidson County Criminal Court, Docket No. 2007-C-1874.

c) On June 11, 2012, the defendant was convicted of Aggravated Assault in Davidson County Criminal Court, Docket No. 2011-B-1712.

d) On October 1, 2014, the defendant was convicted of Aggravated Assault in Davidson County Criminal Court, Docket No. 2014-I-1147.

(PSR at ¶ 22).[6]

In accordance with the Plea Agreement, Petitioner was sentenced to 15 years of incarceration, which under the ACCA constitutes the 15-year minimum sentence for any person who violates 18 U.S.C. § 922(g) and—prior to such violation—had three prior convictions for either a violent felony or a serious drug offense committed on occasions different from one another. *See* 18 U.S.C. § 924(e)(1). Petitioner did not appeal his sentence, but rather filed a "Motion to Vacate Sentence Due to 9:22(G) [sic] being Rule [sic] Unconstitutional" (R. 60),[7] which the Court

---

[6] The last three of these four appear to be the convictions referred to in the Plea Agreement. The first of the four appears to have gone unmentioned in the Plea Agreement.

[7] "Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 'a state prisoner always gets one chance to bring a federal habeas challenge [under 18 U.S.C. § 2255] to his conviction.'" *In re Hill*, 81 F.4th 560, 567 (6th Cir. 2023) (quoting *Banister v. Davis*, 140 S. Ct. 1698, 1704 (2020)). "But after that, the road gets rockier." *Id.* "For petitions filed after the first one – 'second or successive' petitions in the language of

denied in a short order (Doc. No. 61) based on—among other things—the fact that Petitioner had not claimed, let alone support the claim, that his *particular* statute of conviction, § 922(g)(1), is unconstitutional either on its face or as applied to him. Petitioner then filed the instant Petition.

Petitioner currently is serving his sentence at Coleman I United States Penitentiary. According to the Bureau of Prisons ("BOP"), although the record reflects that previously he was serving his sentence at Atwater U.S. Penitentiary in California. Petitioner's release date is January 28, 2034. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed April 30, 2026).

<u>STANDARD OF REVIEW</u>

A prisoner in custody can invoke 28 U.S.C. § 2255 to challenge the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an

---

the statute – applicants must overcome strict limits before federal courts will permit them to seek habeas relief." *In re Stansell*, 828 F.3d 412, 413 (6th Cir. 2016) (citing 28 U.S.C. § 2244(b)(3)(A)). "To file a second or successive application in a district court, a prisoner must first obtain leave from the court of appeals based on a 'prima facie showing' that his petition satisfies the statute's gatekeeping requirements." *Banister*, 140 S. Ct. at 1704 (citing 28 U.S.C. § 2244(b)(3)(C), (b)(1) and (b)(2)); *see also* Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts ("Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2244(b)(3) and (4).").

Given this, the Court arguably could consider the "Motion to Vacate Sentence Due to 9:22(G) [sic] being Rule [sic] Unconstitutional" (R. 60) to be a first petition under 18 U.S.C. § 2255, in which Petitioner would need to obtain permission from the U.S. Court of Appeals for the Sixth Circuit in order to proceed on the instant Petition, which plainly is a petition under § 2255. However, the Court declines to consider that motion as such and views the Petition as the first petition under 18 U.S.C. § 2255.

error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). It is the petitioner's burden to show his entitlement to relief, sustaining his or her contentions by a preponderance of the evidence. *See Potter v. United States*, 887 F.3d 785, 787-88 (6th Cir. 2018); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). This requires a petitioner to "set forth facts." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Gabrion v. United States*, 43 F.4th 569, 578 (6th Cir. 2022) (brackets omitted) (quoting *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013)). Indeed, when a "petitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof," his motion is "legally insufficient to sustain a review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam); *see also Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017) ("Bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the government to respond to discovery or to require an evidentiary hearing.").

If a material factual dispute arises in a Section 2255 proceeding, the court must hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Ray*, 721 F.3d at 761; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*,

488 F.3d 325, 333 (6th Cir. 2007)). Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

DISCUSSION

Pursuant to Section 2255, Petitioner seeks to vacate or correct his sentence in his underlying criminal case. (Doc. No. 1). In the Petition, Petitioner sets forth two grounds for vacating or correcting his sentence: (i) that his "two pior [sic] agg[ravated] assault [convictions are] no longer crimes of violence"[8] (*id*. at 3) (relying on *Borden v. United States*, 593 U.S. 420, (2021)); and (ii) that he received ineffective assistance of counsel because, according to Petitioner, his counsel failed to argue that his prior aggravated assault convictions were not "crimes of violence" (*id*. at 4) and/or his counsel failed to inform him that "his charge require[d]" a sentence

---

[8] It is notable that Petitioner uses the term "crimes of violence." (Doc. No. 1 at 3). "Crimes of violence" appears, among other places in Title 18 and the United States Sentencing Guidelines, in 18 U.S.C. § 924(g)(4):

> Whoever, with the intent to engage in conduct which…constitutes a *crime of violence* (as defined in subsection (c)(3)) . . . travels from any State or foreign country into any other State and acquires, transfers, or attempts to acquire or transfer, a firearm in such other State in furtherance of such purpose, shall be imprisoned not more than 10 years, fined in accordance with this title, or both.

18 U.S.C. § 924(g) (emphasis added). It is true that here, and elsewhere, the term "crimes of violence" carries significance in terms of criminal liability of sentencing. But it has *no* significance to the applicability of the ACCA; "crimes of violence" does not appear in 18 U.S.C.A. § 924(e), i.e., the ACCA—the statute under which Petitioner was sentenced. *See* 18 U.S.C. § 924(e).

The ACCA prescribes a 15-year mandatory minimum prison sentence on individuals convicted of a violation of 18 U.S.C. §922(g)—including 18 U.S.C. § 922(g)(1)—where the violation occurred after the defendant sustained three prior convictions for "violent felonies" or "serious drug offenses" referred. *See* 18 U.S.C. § 924(e). Petitioner was charged via a single-count indictment with possession of a firearm subsequent to a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (R. 14 at 1).

Thus, whether Petitioner had convictions for "crimes of violence" (as opposed to convictions for "violent felonies") is irrelevant to whether he was properly sentenced under the ACCA. Given this fact, and the fact that the Petition speaks in terms only of "crimes of violence" and not violent felonies, the Petition potentially could be dismissed from the outset on that basis alone, and it should be dismissed on that basis alone. But given Petitioner's *pro* se status, the Court examines Petitioner's grounds for relief as if is complaining about his prior convictions being treated as "violent felonies" for purposes of the ACCA, rather than as "crimes of violence."

enhancement under the ACCA, thus causing Petitioner not to "look into what [he] was signing far as [his] plea agreement, the 924(e) goes. . . ." (Doc. No. 33 at 1).

**I.      Via the Plea Agreement, Petitioner Has Waived His Right to Bring a Section 2255 Claim.**

"A guilty plea is a grave and solemn act," *Brady v. United States*, 397 U.S. 742, 748 (1970), and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), cited in *Cannamela v. United States*, No. 3:17-CR-00219, 2022 WL 16541178, at *2 (M.D. Tenn. Oct. 27, 2022). A defendant's informed and voluntary waiver of his right to pursue collateral relief in a plea agreement precludes his ability to file a subsequent motion under § 2255. *See e.g., Campbell v. United States*, No. 1:20CV1223, 2021 WL 4593929, at *2 (N.D. Ohio Oct. 6, 2021) (citing *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001)). The Sixth Circuit has held that plea-agreement waivers of Section 2255 rights "are generally enforceable," so long as the defendant entered "into the waiver agreement knowingly, intelligently, and voluntarily." *Davila*, 258 F.3d at 450-51. *See also United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017) ("We will enforce an appeal waiver included in a plea agreement when the agreement is made knowingly and voluntarily.").

In this instance, Petitioner signed his name under the following paragraph in the Plea Agreement:

> I hereby agree that I have consulted with my attorney and fully understand all lights with respect to the Indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. *I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to i*t.

(R. 33 at ¶ 37) (emphasis added). His attorney signed under the following paragraph:

> I am counsel for [Gross] in this case. I have fully explained to [Gross] his rights with respect to the Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to [Gross]

> the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with [Gross]. To my knowledge, [Gross]'s decision to enter into this Plea Agreement is an informed and voluntary one.

(*Id*. at ¶ 38.). The advice of counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *See Henderson v. Morgan*, 426 U.S. 637, 647(1976) ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady v. United States*, 397 U.S. 742, 754 (1970) (suggesting that coercive actions on the part of the prosecution could be dissipated by counsel). In addition to the Plea Agreement, Petitioner represented to this Court in his petition to enter a plea of guilty (R. 32, "Petition to Entry Guilty Plea") that he was aware of the contents of the Plea Agreement and offered his plea of "guilty" freely and voluntarily and of his own accord, and that his lawyer explained the Petition to Entry Guilty Plea to Petitioner and that he understood it. (R. 32 at ¶ 13-14). Petitioner also represented that he was not under the influence of either drugs or alcohol at the time of requesting to enter a plea of guilty. (*Id*. at ¶ 15).

Despite the above, Petitioner now argues that he "had no knowledge" as to what he was signing when he signed the Plea Agreement, (Doc. No. 33 at 1), but the Court finds that argument to be unavailing. Petitioner "offers no evidence . . . to suggest that his plea was unknowing or involuntary." *See United States v. Sturgill*, 761 F. App'x 578, 582 (6th Cir. 2009). On the contrary, the record shows (as discussed above) that Petitioner had at least two different settings in which he could discuss the contents of or ask questions about his Plea Agreement: (1) in discussions with his counsel, as indicated by the language of the Petition to Entry Guilty Plea, and (2) during the hearing before this Court at which Petitioner entered a plea of guilty (R. 62, the "Plea Colloquy"), during which he and the Court had a lengthy colloquy that covered—among other things—the nature of Petitioner's underlying charge, the effect of entering into a plea agreement, and the

contents of the Plea Agreement (including the waiver provision that waives of some of his rights to appeal and seek relief under Section 2255).

Considering the above, it is irrefutable that Petitioner knowingly and voluntarily entered into his Plea Agreement, and therefore the Court finds that the Plea Agreement is enforceable. This includes its waiver language (at paragraph 30): "Defendant [ ] knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241." (R. 33 at ¶ 30). So, Petitioner unequivocally made an enforceable waiver of his right to bring the Petition now pending before the Court.

A defendant's sentence will not be vacated on the ground that the plea of guilty was coerced or is otherwise illegal, where (as here) the defendant was "carefully interrogated by the trial judge with respect to the offenses committed," where the defendant was represented by "competent counsel," and where (as here) the defendant "discussed the offenses freely and voluntarily and freely admitted guilt, while fully aware of [her] rights." *United States v. Parker*, 292 F.2d 2, 3 (6th Cir. 1961). Indeed, it is well-settled that where a court scrupulously follows the requirements of Federal Rule of Criminal Procedure 11, "the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). As mentioned earlier herein, this Court engaged in the plea colloquy mandated by Federal Rule of Criminal Procedure 11. (R. 62 at 1).

The Court first advised Petitioner of the elements of the crimes to which he was pleading guilty and explained that the Government at trial would be required to prove these elements beyond a reasonable doubt. (*Id.* at 7-9). In so doing, the Court specifically confirmed that Petitioner, via his counsel (Ms. Harcombe), and the prosecutor (Mr. Brantley) agreed that the ACCA would

apply. (*Id.* at 8). The Court thereafter asked Petitioner whether he had discussed with his lawyer any possible defenses to his charge, to which Petitioner answered "Yes." (*Id.* at 10). The Court also asked Petitioner whether he was satisfied with his lawyer's representation, to which Petitioner answered "Yes, sir," and whether he had complaints about his lawyer, to which Petitioner answered "No, sir." (*Id.*).

The Court also informed Petitioner of the maximum possible penalty provided by law, as well as the mandatory minimum sentence, and Petitioner confirmed that he understood. (*Id.* at 9-11). The Court then advised Petitioner of the trial rights he was giving up by pleading guilty and confirmed that Petitioner still wanted to plead guilty. (*Id.* at 18-20). The Court then ascertained that Petitioner had read the Plea Agreement (and Petition to Enter Guilty Plea) line for line and word for word, had discussed these documents with his attorney to his full satisfaction, and had no questions about either of them. (*Id*. at 20). Then, drawing Petitioner's attention to paragraph 30in particular, the Court asked Petitioner whether—he knew what the Plea Agreement was saying there, to which the Petitioner said, "Yes, sir." (*Id*. at 23). Specifically, the Court explained that Petitioner there was waiving "a good deal" of rights to challenge his conviction and sentence, then confirmed that Petitioner had no questions about this language:

> The Court: [A]s part of a plea bargain, sometimes defendants give up their rights to challenge their conviction or their sentence in these ways. This language is telling me that you're giving up some -- not all, but some and a good deal of your rights to challenge your conviction or your sentence later on. That's what this language is telling me. Is that what it's telling you?
>
> The Defendant [Gross]: Yes, sir.
>
> The Court: Any questions at all about this language?
>
> The Defendant: No, sir.

(*Id*. at 24). The Court specifically asked whether anyone had forced or put pressure on or threatened

him to plead guilty; he answered "No, sir." (*Id*. at 24). The Court asked whether anyone had promised Petitioner anything—other than what was in the Plea Agreement—in return for pleading guilty, and Petitioner answered "No, sir." (*Id*. at 25).

At the Court's request, the Government stated on the record the factual basis for the plea. (*Id*. at 27-29). Upon questioning by the Court, Petitioner agreed with the Government's summary of the facts—as well as the Government's description of Petitioner's prior convictions—and stated that he was pleading guilty because he was in fact guilty. (*Id*. at 30). The Court next determined that Petitioner was competent to enter a guilty plea, as follows:

> The Court has observed the appearance of the defendant and his interactions with his own counsel, as well as his responsiveness to the Court's questions, and based on those observations and the particular answers given by Mr. Gross, the Court makes the following findings:
>
> That he is in full possession of his faculties and is competent to plead guilty; that he is not under the apparent influence of drugs, alcohol, or prescription medications; that he understands the nature and elements of the charge, the maximum possible penalties, the mandatory minimum 180-month sentence, and his legal rights to contest the charge at trial; that he has *knowingly* and *voluntarily* waived his legal rights to contest the charge at trial; that *he is aware of the terms of his plea agreement*, including the nature of the joint recommendation under Rule 11(c)(1)(C); that he has *offered to plead guilty knowingly, voluntarily, and intelligently*; and that there has been provided a factual basis sufficient to show his guilt on the charge in the indictment.
>
> For this reason, the plea of guilty is accepted, and Mr. Gross is adjudged guilty of the crime charged in the indictment, subject to his conditional right to withdraw the guilty plea, as we've discussed, under Federal Rule of Criminal Procedure 11(d)**.**

(*Id*. at 31-32) (emphasis added).

The record unmistakably reflects that Petitioner knowingly and voluntarily signed his Plea Agreement as written, and therefore, the Court finds that the terms of the Plea Agreement are enforceable, including the waiver of Petitioner's right to challenge the sentence imposed by a

motion pursuant to 28 U.S.C. § 2255 (such as the instant Petition).[9] Accordingly, Petitioner's first ground of the Petition is **denied**.

## II. Petitioner Has Failed to Show Ineffective Assistance of Counsel.

What Petitioner cannot—and did not—waive via his Plea Agreement was his right to bring any "claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel."[10] (R. 33 at 10). As the second ground of his Petition, Petitioner has asserted a claim of ineffective assistance of counsel.

A defendant has a Sixth Amendment right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This right exists during the plea and sentencing process. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The Supreme Court in *Strickland* set forth a two-part test to evaluate claims of ineffective assistance of counsel. Notably, the court may address the two parts of the *Strickland* test in any order and need not address both parts "if [a defendant] makes an insufficient showing on one." *Id*. at 697.

Under the first prong of the *Strickland* test, the defendant—or in this case, the petitioner—

---

[9] To be clear, Petitioner waived his right to bring a collateral challenge to his sentence except on the basis of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. (R. 33 at ¶ 30). *See Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) ("It has long been settled that a guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice.") (internal quotation marks and citation omitted); *see also United States v. White,* 307 F.3d 336, 341 (5th Cir. 2002) (A waiver of appeal, however, "may not be enforced against a [§] 2255 petitioner who claims that ineffective assistance of counsel rendered that waiver unknowing or involuntary.") None if these exceptions apply to the Petitioner's first ground, but—as discussed below—one of these exceptions (ineffective assistance of counsel) clearly applies to the second ground.

[10] Moreover, as a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows either (1) "cause" excusing his procedural default and "actual prejudice" resulting from the errors of which he complains, or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). An ineffective-assistance-of-counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. Moreover, an ineffective-assistance-of-counsel claim may be raised in a collateral proceeding under § 2255, whether the movant could have raised the claim on direct appeal. *Id*.; *see also United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010).

must establish that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ..." *Id.* at 688. Strategic choices made by counsel after thorough investigation are virtually unchallengeable. *Id.* at 690. Even if a defendant can successfully show his counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. The defendant (here, Petitioner) bears the burden of proving by a preponderance of the evidence that counsel was deficient. *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

Under the second prong of the *Strickland* test, the defendant (here, Petitioner) must establish that the attorney's poor performance prejudiced the defense of the case. *Monea*, 914 F.3d at 419. Significantly, "[c]ourts need not address the first element if the petitioner cannot prove prejudice. In fact, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697). "Proving prejudice is not easy." *Id.* A petitioner faces a "high burden" in demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted).

### A. Petitioner's First Basis for His Claim of Ineffective Assistance of Counsel: That His Counsel Did Not Argue that Two of His Prior Convictions Are Not Violent Felonies.

Petitioner's first basis for the claim of ineffective assistance of counsel is that his "counsel didn't argue these two p[r]io[r] convictions are not crimes of violence." (Doc. No. 1 at 4). His reference here is to his 2012 conviction for aggravated assault with serious bodily injury and his

2014 conviction for aggravated assault with a deadly weapon, (PSR at ¶ 8). In context, and construing this claim in Petitioner's favor, the Court interprets Petitioner to be claiming that his counsel's assistance was ineffective because she did not argue *to the Court* that the 2012 and 2014 aggravated assault convictions—which were used to support the application of the ACCA—were not "violent felonies" and therefore could not serve to trigger the application of the ACCA.

In response to Petitioner's first basis (i.e., that "counsel didn't argue [the] two p[r]io[r] convictions are not crimes of violence"[11] (Doc. No. 1 at 3)), the Government argues that Petitioner has (at least) three prior convictions that qualify as violent predicate offenses under the ACCA (Doc. No. 7 at 7) (relying on Petitioner's PSR), and that—even after *Borden*—the two aggravated assault convictions Petitioner challenges here (i.e., the 2012 conviction for aggravated assault with serious bodily injury and the 2014 conviction for aggravated assault with a deadly weapon) are in fact still violent felonies irrespective of *Borden*. (*Id*.).

According to his PSR, Petitioner at the time of the underlying criminal case had at least three convictions for a "violent felony" within the meaning of 18 U.S.C. § 924(e), including: (1) 2008 conviction for facilitation of attempted especially aggravated robbery; (2) 2012 conviction for aggravated assault with serious bodily injury; and (3) 2014 conviction for aggravated assault with a deadly weapon. (PSR at ¶ 8). Petitioner in the instant Petition challenges only whether his two aggravated assault convictions can be considered predicate "violent felonies" in support of an ACCA application to his underlying criminal case. As such, the Court will substantively assess only those two convictions below with respect to the status of "violent felonies."

1. The 2012 Conviction for Aggravated Assault with Serious Bodily Injury

Petitioner was convicted of Aggravated Assault in Davidson County Criminal Court on

---

[11] As explained in a footnote above, the Court construes Petitioner's use of "crimes of violence" to mean "violent felonies."

June 11, 2012, for an offense that occurred on May 8, 2011. (PSR ¶ 40). Although Petitioner was charged via an indictment with Attempted First-Degree Murder, in violation of Tenn. Code Ann. §§ 39-13-202 and 39-12-101. (Doc. No. 20-5 at 2-3), he pled guilty to the lesser included crime of aggravated assault, in violation of Tenn. Code Ann. § 39-13-102 (Doc. No. 20-6).

The Sixth Circuit has held that aggravated assault is a divisible statute, meaning that the modified categorical approach is applicable to predicate offenses committed under the statute. *Braden v. United States*, 817 F.3d 926, 933 (6th Cir. 2016). Unfortunately, the judgment for this conviction does not indicate which subparagraph of the aggravated assault statute under which Petitioner was convicted of committing, and since the indictment did not charge the crime of conviction, it is necessary to look to other Shepard documents.[12] *See Dillard v. United States*, 768 F. App'x 480, 488 (6th Cir. 2019) (holding that when a defendant pleads guilty to crimes not charged in the indictment, the indictment cannot be considered a Shepard document under the modified categorical approach).

The Aggravated Assault statute, Tenn. Code Ann. § 39-13-102 (2011), defined the offense of aggravated assault as follows at the time Petitioner committed the aggravated assault for which he was convicted in 2012:

> (a) A person commits aggravated assault who:
>     (1) Intentionally or knowingly commits an assault as defined in § 39–13–101 and:
>         (A) Causes serious bodily injury to another; or
>         (B) Uses or displays a deadly weapon; or

---

[12] The Supreme Court has held that in categorizing a prior conviction (including whether the prior conviction is for a violent felony), trial courts are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" when determining the subparagraph (or other subdivision) of the applicable criminal statute was the one under which the defendant was convicted. *Shepard v. United States*, 544 U.S. 13, 16 (2005). The term "Shepard documents" (a term the Court will use herein without italics) refers to the documents just mentioned, i.e., the charging document, written plea agreement, transcript of plea colloquy, and any document containing explicit factual finding by the trial judge who presided over the prior conviction.

(2) Recklessly commits an assault as defined in § 39–13–101(a)(1), and:
    (A) Causes serious bodily injury to another; or
    (B) Uses or displays a deadly weapon.

(b) A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect the child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.

(c) A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual or individuals.

(d) A person commits aggravated assault who, with intent to cause physical injury to any public employee or an employee of a transportation system, public or private, whose operation is authorized by title 7, chapter 56, causes physical injury to the employee while the public employee is performing a duty within the scope of the public employee's employment or while the transportation system employee is performing an assigned duty on, or directly related to, the operation of a transit vehicle.

2010 Pub. Acts, c. 981, § 3, eff. May 27, 2010. The transcript of Petitioner's plea hearing, which is considered a Shepard document, shows that Petitioner (as well as other members of a street gang) had a handgun and shot multiple times at the victim, causing the victim to sustain multiple gunshot wounds in his buttock, thigh, and calf. (Doc. No. 20-7 at 9-10). Thus, the transcript of the plea hearing shows that Petitioner's conviction was based on the (a)(1)(B) subparagraph of the Aggravated Assault statute. As the Sixth Circuit explained in *Braden*, subsection (a)(1)(B) of Tennessee's aggravated assault statute, which criminalizes "intentionally or knowingly commit[ting] an assault" while "us[ing] or display[ing] a deadly weapon," qualifies as a "violent felony" under 18 U.S.C. § 924(e). 817 F.3d at 933; *see also United States v. Batey*, 2023 WL 2401193, at *3 (6th Cir. Mar. 8, 2023) (opining that, "Convictions under § 39-13-102(a)(1)(B) are violent felonies under the ACCA's use-of-force clause.").

Moreover, the Court can draw "the fair and reasonable inference[]" that, given his act of using the handgun to shoot at the victim, Petitioner was convicted of the (a)(1)(B) subparagraph of Tenn. Code Ann. § 39-13-102, as opposed to the (a)(2)(B) subparagraph—which carries a mens rea of recklessness. *Batey*, 2023 WL 2401193, at *3 (quoting *United States v. Patterson*, 878 F.3d 215, 219 (6th Cir. 2017)); *see also Davis v. United States*, 900 F.3d 733, 737 (6th Cir. 2018). Further, the factual statement of transcript of the plea hearing indicates that the remaining subsections of Tenn. Code Ann. §§ 39-13-102—namely, subsections (b), (c), and (d)—were not implicated .

In sum, the relevant Shepard documents demonstrate that Petitioner was convicted under the (a)(1)(B) subparagraph of Tenn. Code Ann. § 39-13-102, which qualifies as a "violent felony" under the ACCA, in that the 2012 Conviction has—as an element— "the use, attempted use, or threatened use of physical force against the person of another," as required by 18 U.S.C. § 924(e)(2)(B).

Thus, the Court finds that the 2012 Conviction counts as a predicate "violent felony" for purposes of the ACCA.

2. The 2014 Conviction for Aggravated Assault with a Deadly Weapon

On October 1, 2014, Petitioner was charged by information (rather than by indictment) with aggravated assault for an offense that occurred on August 15, 2014, and was found guilty of that offense, after entering a plea. (PSR ¶ 47; Doc. No. 20-8[13]; Doc. No. 20-9).

The aggravated assault statute, Tenn. Code Ann. § 39-13-102 (2014), defined the offense of aggravated offense as follows at the time that Petitioner committed the aggravated assault for

---

[13] A Tennessee criminal information is a Shepard document , i.e., a document that the Court can consider in determining whether Petitioner's conviction under that criminal information qualifies as an ACCA predicate. *Packett v. United States*, 738 F. App'x 348, 352–53 (6th Cir. 2018) (confirming that a Tennessee criminal information is a Shepard document).

which he was convicted in 2014:

> (a)(1) A person commits aggravated assault who:
>> (A) Intentionally or knowingly commits an assault as defined in § 39–13–101, and the assault:
>>> (i) Results in serious bodily injury to another;
>>> (ii) Results in the death of another;
>>> (iii) Involved the use or display of a deadly weapon; or
>>> (iv) Was intended to cause bodily injury to another by strangulation or bodily injury by strangulation was attempted; or
>> (2) Recklessly commits an assault as defined in § 39–13–101(a)(1), and the assault:
>>> (i) Results in serious bodily injury to another;
>>> (ii) Results in the death of another; or
>>> (iii) Involved the use or display of a deadly weapon.
> . . . .

> (b) A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect the child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.

> (c) A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual or individuals.

> (d) A person commits aggravated assault who, with intent to cause physical injury to any public employee or an employee of a transportation system, public or private, whose operation is authorized by title 7, chapter 56, causes physical injury to the employee while the public employee is performing a duty within the scope of the public employee's employment or while the transportation system employee is performing an assigned duty on, or directly related to, the operation of a transit vehicle.

2013 Pub. Acts, c.461, §§ 2, 3, eff. July 1, 2013. While neither the information nor the judgment refers the specific *subparagraph* of the statute under which Petitioner was convicted, the plain language of the charging document (the information) confirms that it was the (a)(1)(A)(iii) subparagraph, as the charging document charges Petitioner with "intentionally or knowingly"

causing bodily injury to the victim "by the use or display of a deadly weapon." (Doc. No. 20-8 at 2).

Thus, this Aggravated Assault conviction also qualifies as a predicate "violent felony" for purposes of the ACCA.

Both of the above convictions satisfy the statutory definition of "violent felony" within 18 U.S.C. § 924(e). As shown above, there is no mere "reckless" conduct at issue. Therefore, the Court agrees with the Government that *Borden* is inapposite here.

Moreover, because it is clear that Petitioner's prior aggravated assault convictions are "violent felonies" properly supporting the application of the ACCA when sentencing Petition in his's underlying criminal case, it cannot be said that any alleged failure by his counsel to argue that those two convictions are not considered "violent" is actionable under *Strickland*. Therefore, the Court does not find ineffective assistance of counsel on Petitioner's first basis.

**B. Petitioner's Second Basis for Claim of Ineffective Assistance of Counsel: That His Counsel Did Not Inform Him That His Charge Would Require a Sentence Enhancement Under the ACCA.**

Petitioner also argues via his Supplement a second basis for his claim of ineffective assistance of counsel: that because his counsel did not inform him that his charge would "require" a sentence enhancement under the ACCA, Petitioner did not "look into what [he] was signing far as [his] plea agreement, the 924(e) goes." (Doc. No. 33 at 1). [14] Construing this claim in Petitioner's favor, the Court construes Petitioner to claim that his counsel did not *advise him* that "one of [his]

_____

[14] As before, the Court does not take Petitioner's assertion to be a complaint about having pled guilty, but rather, construes it as a complaint about having conceded in his Plea Agreement that the charge to which he pled guilty was subject to sentencing under the ACCA. The nature of the latter complaint, properly construed in context, is that Petitioner's counsel's assistance was deficient in not explaining to Petitioner that his charge of conviction required a sentencing enhancement under the ACCA, and as a result, he was not properly aware that by signing his Plea Agreement he was conceding that he should be sentenced under the ACCA (when actually, according to Petitioner, he should not be sentenced under the ACCA).

prior felonies" (according to Petitioner) is not a felony," and had this advice been given Petitioner would not have entered the Plea Agreement—wherein he concedes that the 2012 and 2014 aggravated assault convictions count as violent felonies—as written.[15] Petitioner's second basis falls flat, because Petitioner would have been properly sentenced under the ACCA even without his concession.

As indicated above, an Armed Career Criminal is "a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . .." 18 U.S.C. § 924(e)(1). Here, three specific prior convictions of Petitioner's (namely, a 2008 conviction for Facilitation of Attempted especially aggravated robbery, a 2012 conviction for aggravated assault with serious bodily injury, and a 2014 conviction for aggravated assault with a deadly weapon (R. 33 at 5)) qualified as predicate violent offenses to support a sentencing enhancement under the ACCA. A reasonably competent counsel could have concluded that the ACCA was applicable, and as such, Petitioner's counsel was not deficient in allegedly failing to argue that the ACCA should not apply to Petitioner's sentence. In the same vein, Petitioner's counsel's advice to concede that the ACCA is applicable did not cause Petitioner to be sentenced under the ACCA, as he properly would have been sentenced under the ACCA even without such a concession.

Nevertheless, Petitioner now argues that he was "misled" or "tricked" (presumably) into

---

[15] Notably, Petitioner does *not* claim that had he been so advised, he would not have pled guilty, and so this claim ultimately does *not* turn on whether: his counsel *should* have advised him that he could and should refuse to concede that "one of [his] prior felonies" (presumably, based on his Petition, one of Petitioner's convictions for aggravated assault) counted as a violent felony, but his counsel did not so advise; and therefore, Petitioner plead guilty when he would not have pled guilty had he been so advised. Put another way, Petitioner does not go so far as to claim that counsel's alleged deficient performance in failing to advise Petitioner *caused* him to plead guilty. And so, the Court will forgo addressing any such claim.

conceding that three of his prior convictions were for "violent felonies" and thus qualified him as an Armed Career Criminal. (Doc. No. 33 at 1). But this argument fails, flying as it does in the face of the record. *Cf Montejo v. United States*, No. 3:22-CV-00219, 2025 WL 818182, at *5–6 (M.D. Tenn. Mar. 13, 2025). To the extent that he means here that he was misled into conceding that he had three convictions for violent felonies (and thus qualified for sentencing under the ACCA *when in fact he did not so qualify*), that argument is without merit as discussed above. And to the extent that he means that he was misled into conceding this *when he did not realize that he was conceding this*—a *separate* grievance that a criminal defendant might have *even if* what he or she conceded was in fact true, inasmuch as concessions even of *truths* can weaken a defendants position—that argument is also without merit because the record shows that Petitioner was not misled about the fact that he was making this concession.

The record shows that Petitioner was made fully aware (by both the Court *and his counsel*) that he understood that he was conceding in his Plea Agreement that he should be sentenced under the ACCA. To begin with, Petitioner represented to this Court that he was satisfied with his attorney's investigation and representation. As a part of his Petition to Enter a Guilty Plea, Petitioner—by signing his name—represented to this Court that:

> [His] lawyer has done all the investigation and research in this case that [he] []
> asked her to do, and she has reviewed with [Petitioner] the discovery material
> provided by the government. [Petitioner is] satisfied with her representation at this
> point.

(R. 32 at ¶ 11).

Moreover, a trial court's proper plea colloquy cures any misunderstanding that a defendant may have had about the consequences of his plea. *Croft v. United States*, No. 13-CR-20568, 2019 WL 560254, at *7 (E.D. Mich. Feb. 12, 2019) (citing *Ramos v. Rogers*, 179 F.3d 560, 565 (6th Cir. 1999). During the Plea Colloquy, the Court expressly and openly asked the attorneys—with

Petitioner present—during the Plea Colloquy whether the ACCA would apply in Petitioner's case, and the attorneys answered in the affirmative. (R. 62 at 8). The Court subsequently informed Petitioner that the application of the ACCA would result in a mandatory minimum term of 15 years (180 months in prison) with the maximum term of supervised release raised from three to five years, and thereafter, the Court asked: "[t]he elements of the offense and the maximum possible penalties, the mandatory minimum penalty, are these things that you've been able to discuss with [your attorney] to your full satisfaction?" In response, Petitioner answered, "Yes, sir." (*Id*. at 9-10). And as noted above the Plea Agreement—which (as also noted above) Petitioner had represented, in the Plea Agreement itself and in his colloquy with the Court, that he had read—makes entirely clear both the consequences of sentencing under the ACCA and that Petitioner was conceding that he had the required convictions to qualify for sentencing under the ACCA.

The Court also asked Petitioner whether he discussed with his counsel any possible defenses to his charge, to which Petitioner answered "Yes." (*Id*. at 10). The Court also asked whether Petitioner was satisfied with his lawyer's representation, to which Petitioner answered "Yes, sir," and whether he had complaints about his lawyer, to which Petitioner answered "No, sir." (*Id.*). Notably absent was any complaint that, contrary to the implication of Petitioner's answers, his lawyer had not adequately explained the Plea Agreement to him.

In short, there is no reason at all to believe that Petitioner did not understand the relevant provisions of the Plea Agreement, i.e., the part wherein he conceded that he had (at least) three violent felonies and thus qualified for sentencing under the ACCA. Instead, there is every reason to believe the opposite.

For all these reasons, the Court finds that the entirety of ground two (i.e., Petitioner's claim of ineffective assistance of counsel) must be **denied**.

**CONCLUSION**

For the reasons stated herein, Petitioner did not meet his burden to show entitlement to relief pursuant to Section 2255. Accordingly, the Petition (Doc. No. 1) is **DENIED**.

Additionally, as explained in an earlier footnote herein, the Government's Response (Doc. No. 7) is not a motion, but rather a response to the Petition. Therefore, the Clerk is DIRECTED to terminate it as a motion. The Clerk is also DIRECTED to update Petitioner's address to: USP Coleman I, U.S. Penitentiary, P.O. Box 1033, Coleman, FL 33521, and to ensure that both this order and the (purely ministerial) order at Docket No. 35 be mailed to Petitioner at that address.

The Clerk is DIRECTED to enter judgment under Rule 58 to ensure that (consistent with the dual-captioning above) a copy of this order is filed in Petitioner's underlying criminal case (3:21-cr-00190), and to close the file.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE